67   501,
98   ³121

## Abendpost Company v. Frederick Hertel.

1. PLEADING—*When the Common Counts are Sufficient.*—Where a person in the employ of a publishing company at a weekly salary and a commission upon advertisements procured by him, is discharged by his employer he will be entitled to recover, under the common counts, the amount due him upon his weekly salary as well as the commission upon all advertisements procured by him and used by the company, although his full term of service has not been completed.

2. CONTRACTS—*Customs and Usages—Duty of the Courts in Construing.*—Whenever it is necessary for a court to construe a contract it will place itself in the shoes of the parties, thus reading the subject-matter from their standpoint, that it may see it in the view it had to them when entered into; consequently the customs and usages of the contemplated business and service known to the contracting parties when the agreement was made, is admissible in evidence, but neither such custom nor usage can do away with the plain stipulations of the contract.

3. MASTER AND SERVANT—*Discharge—Knowledge of Cause for—Reasons Given for.*—In a suit for a wrongful discharge, if it be proved that facts existed rendering a discharge proper, it is immaterial whether the knowledge of such facts came to the employer before or after the dismissal, or whether the reasons given for the dismissal were sufficient or not.

**Assumpsit,** upon a special contract. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the October term, 1896. Reversed and remanded, unless the parties can agree on the amount due for which the judgment will be affirmed. Opinion filed December 28, 1896.

### STATEMENT OF THE CASE.

Appellee brought an action for damages for breach of a contract of employment. Appellant conducted a newspaper in the city of Chicago, called "Abendpost," published in the German language. An agreement in writing was entered into between appellant and appellee, in the following terms:

"Memorandum of verbal contract between the Abendpost Company and Mr. Hertel.

CHICAGO, ILL., February 25, 1892.

Mr. Hertel to be advertising manager of the Abendpost Company.

He is to take his instructions from Mr. Glogauer, exclusively, and to be independent of any other officer or employe of the company.

He is to receive a salary of twenty dollars ($20) per week, and besides a commission of ten (10) per centum on all advertisements solicited by him. The entire trade now credited to Victor von Serenyi to be considered as solicited by Mr. Hertel.

This contract to be in force for one year from the date hereof, unless sooner terminated by mutual consent.

THE ABENDPOST CO.,

By FRITZ GLOGAUER, Pres't.

FRED'K HERTEL."

It is claimed that this agreement was superseded by a letter of December 29, 1892, and extended to January 1, 1895.

On February 4, 1893, appellee was discharged by appellant, and thereafter brought his suit, the defense to which was conducted upon the theory that appellee's action fully justified a discharge, and therefore appellant was not re-

sponsible in damages. The trial resulted in a verdict of $2,403.47 in favor of appellee, upon which the court below entered judgment after overruling a motion for a new trial and in arrest of judgment.

The most important point in the case is, whether, under the circumstances shown by the record, the discharge of appellee was justifiable.

GOLDZIER & RODGERS, attorneys for appellant.

MUNSON T. CASE and CASE & HOGAN, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Under the contract between appellee and appellant, appellee testifies that it was his business to give orders to Shaad, his assistant, and that he did so; that his relations with Shaad were such that he was manager and Shaad his assistant. He says: "I was to give him instructions, and he obeyed them when he felt like it, and did not when he didn't. On one occasion I did have a fisticuff row with my assistant. I gave him a slap in the face and he returned it, in front of the Abendpost. Afterward we had trouble, and I reported to Glogauer. He called Shaad up, and in my absence told him he was to obey my orders. I also saw a copy of a letter to that effect. Later, my assistant interfered with me by going to see some customers whom he should not see, and I again reported to Glogauer."

It is manifest that prior to the discharge of appellee, there was a good deal of friction between him and his employer. Appellee, among other things, testifies: "I also had charge of advertising contracts with the railroad companies. I was the man who made them, and kept them in my possession, and it was intended that requests for transportation should go through my hands. I also carried on the correspondence concerning the closing of these contracts, whatever there was. Mr. Glogauer had requested me to get the railroad business into shape.

Q. And you did? A. I did to the best of my ability, until such time as I was interfered with by my assistant, and he went around and he would lower prices thirty per cent below me, and I told in the office—I forget who it was —I told somebody under those circumstances it was just idle work for me to try and bring that railroad department into shape.

Q. And that you would not have anything further to do with it? A. Well, I might have said that I was disgusted with it.

Q. Well, didn't you say you would not have anything further to do with it? A. I don't remember that I did but I might have said so. I did not throw up these contracts or surrender them to the bookkeeper. I do not remember saying that I would have nothing further to do with them."

It appears that on Saturday, the 28th of January, 1893, appellee had trouble with his assistant about a desk. Appellee went to the office of the president of appellant and made a complaint concerning the matter. During the next week appellee, according to his own testimony, appeared at the office only on Monday and Tuesday. None of the other employes or officers of the paper seem to have seen him at the office on any occasion during that week. On Monday Mr. Glogauer, the president of appellant, finding that appellee had not been at the office during that day, left a letter on his desk, requesting to see him at the editorial rooms. On Tuesday, finding appellee absent, and his own, Mr. Glogauer's, letter unopened upon appellee's desk, together with other correspondence, Mr. Glogauer wrote to him the following letter:

"CHICAGO, January 31, 1893.

Mr. Frederic Hertel, City.

DEAR SIR: According to the terms of your contract with the Abendpost Company, I hereby instruct you to resume at once all the functions which you have exercised up to this time, and which, as you deemed fit to inform me indirectly, you have relinquished without order. If you can

Abendpost Co. v. Hertel.

not or will not comply with this request, you will oblige me
by handing in your resignation.

Yours respectfully,

FRITZ GLOGAUER,

President of the Abendpost Co."

Appellee excuses his absence from the office during that
week by the statement that he was ill.    As to the letter of
January 31st, by Mr. Glogauer to him, he says:

" After receiving that letter I sat down to answer it.

Q.   Well, go on; state the particulars.    A.   Well, I did
answer it, but the letter got to be rather longer than I ex-
pected it would be.    It was written in long-hand, and I sup-
pose it must have been six or seven or eight pages, but it
got to be pretty late that night—I suppose it was ten o'clock
before I got through with the letter, so I thought I would
not mail it that night, and kept it over until the next morn-
ing.   Next morning read the letter.   Started down town to
go to the Abendpost.   On the way my throat commenced to
trouble me, and I concluded not to go down, and I had the
letter which I had written to the Abendpost copied by a
typewriter on Thursday, the 2d of February; it was copied
at the office of Dr. Brinkerhoff, in McVicker's Theatre build-
ing.   I mailed it in the box southeast corner of Dearborn
and Madison streets; it was addressed to Fritz Glogauer,
president of the Abendpost Company."

The following is the letter:

" CHICAGO, ILL., Feb. 1, 1893.

Mr. Fritz Glogauer, Prest.

DEAR SIR:   Yours of the 21st ultimo, at hand.   I have not
relinquished my functions, that is, to procure Ads. to the best
of my ability.   Yesterday 1,700 lines, display, to-day 600;
in other words, $175 prove this.   Besides I had yesterday
arranged with Kimball and Dr. Brinkerhoff for a three inch
contract from March 1st.   A conference to-day with Frank
Bros., Streeter, Loring and Chas. A. Stevens will very likely
result in some yearly contracts at full price in the course of
this month, provided I am not interfered with.   Therefore
your haughty language is, to say the least, in bad taste and

entirely unwarranted by the circumstances. I ask myself
what have I done to be addressed in such a manner, and I
fail to discover any plausible reason. I have filled my po-
sition, so far as circumstances permitted, with better results
than any of my predecessors; have worked honestly, faith-
fully and conscientiously, and if you had not thought so you
would not have prolonged my contract to January 1, 1895.
The outcome is, that in spite of a smaller circulation, the
Abendpost, as an advertising medium, stands to-day in quality
and quantity fifty per cent higher than ever before, and ex-
clusively through my work. Any newspaper man in Chi-
cago will tell you so if you do not know it. Again, what
cause for complaint have I given you? How have you ap-
preciated my work and endeavors? Certainly not by honest
and straightforward dealing. While you have solemnly
pledged yourself, in the presence of your secretary, not to
underbid me, you have personally granted rebates and reduc-
tions against which I could not compete, and your stipula-
tion to keep the matter secret is proof that you knew you
were acting in bad faith. It is only by chance that I be-
came acquainted with this state of affairs later on, and fur-
ther investigation revealed that rebates, etc., have all along
been the rule, while honest rates were the exception. You
have often stated before the entire office, with great bravado,
that rates must be kept up under all circumstances, enjoin-
ing me, for instance, from accepting 'fat locals' at $1, when
at the very same moment you jumped at them in a quiet
way, unbeknown to me, at 40 cents and less. By such ques-
tionable methods I was prevented from closing contracts
with about half a dozen State street houses, and conse-
quently minus the commissions which a fair and honest
compliance with the spirit of our contract would have given
me. Of course I remonstrated against such proceedings
whenever they came to my knowledge. But let that pass
for the time being. The principal cause of friction and dis-
content was the eternal interference with my privileges on
the part of my so-called assistant. Numerous complaints
have caused you to investigate, to acknowledge the justice
of my grievance, and the necessity of removing the cause.

In the absence of my assistant you have, on a dozen occasions, been very emphatic, yes, even rampant (to the great amusement of the office *personnel*) in your declarations and vows that he must and should be discharged the very first time he refused to comply with my instructions. But in the last moment you always lacked the courage to live up to your promises and to abolish a method which you yourself pronounced as detrimental to the success of the advertising department. This very same question was made the main feature of our new contract. Although my credulity caused a good deal of amusement in certain circles, I trusted to you when you pledged your word of honor, as a man, and sealed the compact by solemn hand-shaking, that you would muster courage enough to become independent of the "power behind the throne," as the boys call it. Perhaps the benzine incident will refresh your memory. I will not rehash ancient history, but only state that since the 29th of December, 1892, the date of our new contract (during my absence in the east):

1. My assistant called upon State street houses, contrary to my explicit orders, as you knew at the time " (under the plea that if he did not come in as a sort of guardian angel we would lose the trade)."

2. He neglected or refused to call on people to whom I had sent him (Eberhard, etc.,) so that I had to accept their Ads. from the International Agency.

3. I requested him to renew Dr. Gagnon, who was paying $60 for four inches per month, with instructions not to take any less or to leave him alone. Instead, he donates $10 on my old contract, and makes a new one at $75, less the above $10, leaving $65 for one inch, e. o. d. for one year.

4. Contrary to orders, he went to railroad offices, making rates thirty per cent below mine. On hearing this you were again very emphatic (in his absence, as usual). The conference with him on Friday afternoon had such a crushing effect, that the following Monday—

5. He went, contrary to orders, to the Northern Trust Bank, etc. Let these few instances suffice. There is too

much method in these proceedings to convince me that they are not intentional, and I am strengthened in my belief by a personal, unprovoked insult, offered on last Saturday in the presence of the entire office.   Under the sting of this insult I spoke to you and stated that I would have nothing more to do with him.   I repeat that now most emphatically, and demand that you comply with the terms of our new contract without any further evasions, quibbles, subterfuges or delays.   I will not submit to any further humiliations and interference, particularly not to insults in my own office, and if that does not suit you, and if you refuse to grant the privileges of my position, like any other daily paper (that is, all facilities and assistance at your disposal), my resignation will be tendered as soon as we can agree on an equitable basis of settlement on all outstanding contracts, most of which have been extended to January 1, 1894.   I am willing to settle at a low figure, if thereby we can arrive at a quick and peaceable arrangement.   If, however, that can not be accomplished, it will be about time for me to investigate whether the trouble lies in your want of good will, or, as you stated recently, in your want of power.   There is certainly some way to get these things into a correct shape. Meanwhile I attend to my duties as before.   Unless specially wanted, I will not be at the office for a few days, as, in the first place, I can not produce any Ads. there, and, secondly, because I want to nurse my sore throat, which troubles me a good deal.

Very respectfully,

FRED'K HERTEL,

Adv. Mgr."

Appellee testified :   " On that day went to Carson, Pirie & Co., because I had been promised an advertisement there. After sending letter I went home.

Q.   Why did you go home?

(Objected to as immaterial; overruled; exception by the plaintiff.)

A.   Because my throat hurt me; it troubled me."

Appellant wrote to appellee as follows:

Abendpost Co. v. Hertel.

"Chicago, February 2, 1893.

Mr. Fred. Hertel, 116 Montana St., City.

Dear Sir: You have neither replied to the letter I sent you yesterday, nor have you made your appearance in the office of the Abendpost since Saturday last. I therefore consider your place as advertising manager vacated, and shall appoint your successor to-morrow.

Yours respectfully,

Fritz Glogauer."

And received from appellee the following reply:

Chicago, February 2, 1893.

Mr. Fritz Glogauer, Presdt., 203 Fifth Avenue.

Dear Sir: Your epistle of the 31st of January was received at my house yesterday, February 1st, about 7 p. m., and was answered fully this morning. If it has not come into your hands, it may, perhaps, have found its way into the waste basket. Your assertion that I had not been in the office since Saturday last, proves your absolute ignorance of what is going on. I was there day before yesterday and went home on account of my throat. You might have learned all this by a simple inquiry, but your not asking discloses your aim. If I feel better, I will try and be at your office Saturday noon; meanwhile you can make as many appointments as you please. My contract holds good until January 1, 1895. If you insist upon war you can be accommodated.

Yours truly,

Fred'k Hertel,

Adv. Manager."

To which letter appellant replied as follows:

"Chicago, Feb. 3, 1890.

Mr. Fred. Hertel, City.

Dear Sir: The mere fact that all communications addressed to you, including my own letter of Jan. 31st, lay dead in your office, proves conclusively that you have not favored the Abendpost with your visit. Whether you have seen our customers on State street is, at least, doubtful and entirely immaterial. You saw fit to ignore me, and to

state to Mr. Lorenz that henceforth you would do nothing but see a few houses on State street. One of your letters to Mr. Lorenz contained insulting references to me. When I instructed you to resume all your functions at once, you did neither reply in writing nor appear at the office. I waited thirty-six hours before I notified you of your discharge. All our customers have been notified that you have ceased to be advertising manager of the Abendpost, and my decision is final. If you thought that your contract entitled you to do what you please—and I have no other explanation of your conduct—you will find out your mistake.

Yours, respectfully,

FRITZ GLOGAUER."

An employer is entitled to respectful treatment by his employes. Appellee is a man of superior ability and education. It was neither through inadvertence nor ignorance that he wrote the insulting letter of February 1st, and it would seem he must have known that unless the president of the Abendpost company were very different from the ordinary business man in charge of a large commercial enterprise, it would be impossible, after the writing of such a letter, for harmonious relations to exist between him and Mr. Glogauer, or the intercourse between them to be such as the proper discharge by appellee of his duties as an employe of the paper, required.

There does not seem to have been any sufficient excuse for the act of appellee in striking in the face his assistant, Mr. Shaad.

It is manifest that no employer is obliged to or can tolerate such conduct.

Appellee was properly discharged. He is entitled to receive all compensation by him earned up to the time of his discharge, unless deduction should be made for his absence during the week immediately prior to the severance of his relations with appellant. This, we do not understand appellant insists upon. The compensation of appellee consisted of a certain stipend per week, and also a commission upon all advertisements solicited by him. Upon all advertise-

ments obtained by appellee which were afterward published in the Abendpost, whether before or after his discharge, he is entitled to the agreed commission.

Whether appellee did obtain contracts, and if so, from whom, and the extent—that is to say, the terms—thereof, is a question of fact to be submitted to the jury.   Upon all contracts for advertisements obtained by him, which were published in the Abendpost, either before or after his discharge, he is entitled to a commission.   We think appellee is entitled to recover such commission under the common counts; the work he was to do in respect to such contracts, having been, as we understand the evidence, fully performed, so that when the advertisements were published, his claim for commission thereunder was like his claim for his weekly salary, a thing fully earned, and therefore recoverable under the common counts, although his full term of service, and therefore the entire contract he had entered into, had not been fulfilled; in other words, the contract of appellee with appellant is, in respect to the compensation of appellee, severable.   16th Am. Ed. of Chitty on Pleading, Vol. 1, p. 350, 353, 359.

Whenever it is necessary for a court to construe a contract, it will place itself in the shoes of the parties, that, reading the subject-matter from their standpoint, it may see it in the view it had to them when entered into; consequently, the customs and usage as to the contemplated business and service known to the contracting parties when the agreement was made, is admissible in evidence, but neither such custom nor usage can override or do away with the plain stipulations of a contract.   8th Ed. of Addison on Conts., 182; Samuels v. Oliver, 130 Ill. 73; Everingham v. Lord, 19 Ill. App. 565.

The accounts rendered by the respective parties and claims for compensation made, were admissible in evidence, as bearing upon the question, among others, as to whether the claim for commissions upon certain contracts alleged to have been obtained by appellee, is a just one.

It is urged by appellee that the letter of appellee dated

February 1st, had not been received by, and therefore was not known to, appellant at the time the letter of discharge was sent. This is immaterial. Whether the reasons given for a discharge are sufficient or not, or whether reasons justifying a discharge were known to the employer at the time of dismissal, is immaterial. If there existed facts rendering a discharge proper, it is immaterial whether the knowledge of such facts came to the employer before or after the dismissal. Ridgeway v. Hungerford Market Co., 3 Adolphus & Ellis, 171; Sterling Emery Wheel Co. v. McGree, 40 Ill. App. 340; Wood on Master and Servant, Sec. 121; Allentown Iron Co. v. McLaughlin, 24 W. N. C. Pa. 343.

As we have before said, as to what contracts for advertising, if any, appellee obtained, as well as the terms thereof, is a question of fact for the jury, while the construction of such contracts, their terms being certain, is for the court.

If the parties can agree as to what amount is, under the opinion of this court, due to appellee, the judgment of the Superior Court will be affirmed for such sum. If the parties are not able to so agree, .the judgment of the Superior Court will be reversed and the cause remanded.